IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                        **CRIMINAL ACTION NO.: 3:21-CR-39 (GROH)**

**KEVIN WILLIAM MEDRANO,**

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING KEVIN MEDRANO'S MOTION TO DISMISS INDICTMENT
AND DENYING AS MOOT HIS MOTION TO WITHDRAW GUILTY PLEA**

Kevin William Medrano moves to withdraw his guilty plea and dismiss the indictment in this case based upon the Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022). Mr. Medrano argues the felon in possession statute to which he pled guilty runs afoul of the Second Amendment "as it was understood at the time of its adoption[,]" so Bruen compels dismissal of his case.

The parties do not dispute the facts of this case. See ECF Nos. 44 at 2 & 47 at 2. Mr. Medrano was charged with being a felon in possession of a firearm in a single-count Indictment. ECF No. 1. He pled guilty to the charge without the benefit of an agreement with Government. See ECF No. 36. A month after Mr. Medrano entered his guilty plea, the Supreme Court announced its decision in Bruen. Based upon the holding, Mr. Medrano asks this Court to find that he is legally innocent and dismiss his case.

Upon first glance, Mr. Medrano's argument appears somewhat convincing. After all, Section 922(g) was enacted more than a century after the Second Amendment was ratified. However, a more careful examination of his legal argument—and the Supreme Court's decision underpinning it—reveals a mirage. Mr. Medrano sees something in Bruen that simply is not there.

From the first paragraph of its opinion, the Supreme Court notes that Heller, McDonald and Bruen recognize the rights of "ordinary, law-abiding citizens" to possess and carry handguns. Bruen, 142 S. Ct. at 2122. Indeed, the Court's rationale is firmly built upon its chosen "law-abiding" language, which appears throughout Bruen. Below is a non-exhaustive list of the Bruen Court's inclusion of "law-abiding" language that narrows the scope of its decision:

- "petitioners . . . are law-abiding, adult citizens . . . ." Id. at 2124–25;

- "The Second Amendment 'is the very *product* of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." Id. at 2131 (quoting Heller, 554 U.S. at 635);

- "While we do not now provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment, we do think that Heller and McDonald point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2132–33;

- "It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects. Id. at 2134;

- "Nor is there any such historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." Id. at 2138;

- "None of these historical limitations on the right to bear arms approach New York's proper-cause requirement because none operated to prevent law-abiding citizens

with ordinary self-defense needs from carrying arms in public for that purpose." <u>Id.</u> at 2150.

- "Nor, subject to a few late-in-time outliers, have American governments required law-abiding, responsible citizens to demonstrate a special need for self-protection distinguishable from that of the general community in order to carry arms in public." <u>Id.</u> at 2156 (internal quotation and citation omitted);

- "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." <u>Id.</u> at 2156.

In <u>Heller</u>, the Court considered "whether a District of Columbia prohibition on the possession of usable handguns in the home violates the Second Amendment to the Constitution." <u>D.C. v. Heller</u>, 554 U.S. 570, 573 (2008). Two years later, Chicago unsuccessfully argued that its similarly restrictive laws were "constitutional because the Second Amendment has no application to the States." <u>McDonald v. City of Chicago, Ill.</u>, 561 U.S. 742, 750 (2010). In <u>Bruen</u>, the Court was tasked with determining "whether New York's licensing regime respects the constitutional right to carry handguns publicly for self-defense." <u>Id.</u> at 2122.

These cases are categorically different than the case before this Court. The Supreme Court has not yet considered a felon's Second Amendment challenge to Section 922(g). The <u>Heller</u> Court explicitly stated, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." 554 U.S. at 626.

The Supreme Court notes throughout its decisions that the challenging parties are "law-abiding" citizens. The implication is clear: the reach of <u>Bruen</u> ends at the feet of those individuals who are not law-abiding citizens. Someday the Supreme Court may

issue an opinion that includes felons under the Second Amendment's protective umbrella, but the Court has yet to issue that decision.

The bottom line is Mr. Medrano's status as a felon removes him from "the people" enumerated in the Second Amendment. See Range v. Att'y Gen. United States, 53 F.4th 262, 284 (3d Cir. 2022) (explaining that "Second Amendment challenges to § 922(g)(1) require us to decide who count among 'the people' entitled to keep and bear arms because the Founders understood that not everyone possessed Second Amendment rights.")(cleaned up); see also Saul Cornell, "Don't Know Much About History": The Current Crisis in Second Amendment Scholarship, 29 N. Ky. L. Rev. 657, 671 (2003) (contending the right to keep and bear arms was historically "limited to those members of the polity who were deemed capable of exercising it in a virtuous manner").

Even assuming Mr. Medrano falls within the Second Amendment's "the people" and Bruen's framework is appropriately applied to his challenge, his argument still fails. A historical review "shows that legislatures had broad discretion to prohibit those who did not respect the law from having firearms." Range, 53 F.4th at 271.

The Range Court's decision eloquently and exhaustively details the United States' longstanding history of disarming even nonviolent citizens who disregarded the law or possibly posed a threat to social order and established norms. From England's Restoration and Glorious Revolution through the ratification debates, ample evidence exists that legislatures traditionally disqualified categories of people from possessing firearms "to address the threat purportedly posed by entire categories of people to an orderly society and compliance with its legal norms. [Moreover,] legislatures had . . . both authority and broad discretion to determine when individuals' status or conduct evinced

such a threat sufficient to warrant disarmament." Range v. Att'y Gen. United States, 53 F.4th 262, 274–82 (3d Cir. 2022).

In sum, Mr. Medrano's Motion to Dismiss the Indictment fails because he is not afforded the same Second Amendment protections enjoyed by "the people" who are "law-abiding" citizens. Mr. Medrano's status as a felon places him beyond Bruen's reach. Assuming Mr. Medrano is not categorically exempt from the protections announced in Bruen, his argument still fails because the United States has disarmed citizens it found disregarded the law or posed even the slightest possibility of upsetting society since well before the Second Amendment was ratified.

Several courts across the Fourth Circuit have reached the same conclusion, rejecting Bruen challenges to 18 U.S.C. § 922. See, e.g., United States v. Dawson, No. 3:21-CR-00293-RJC-DCK, 2022 WL 17839807 (W.D.N.C. Dec. 21, 2022); United States v. Spencer, No. 2:22-CR-106, 2022 WL 17585782 (E.D. Va. Dec. 12, 2022); United States v. Wagoner, No. 4:20-CR-00018, 2022 WL 17418000 (W.D. Va. Dec. 5, 2022); United States v. Burton, No. CR 3:22-362-MGL-1, 2022 WL 16541139 (D.S.C. Oct. 28, 2022); United States v. Grant, No. CR 3:22-161-MGL-1, 2022 WL 16541138 (D.S.C. Oct. 28, 2022); United States v. Doty, No. 5:21-CR-21, 2022 WL 17492260 (N.D. W. Va. Sept. 9, 2022); United States v. Nutter, No. 2:21-CR-00142, 2022 WL 3718518 (S.D. W. Va. Aug. 29, 2022).

Accordingly, Mr. Medrano's Motion to Dismiss is **DENIED**. ECF No. 44. Having denied the Motion to Dismiss, the Court finds the Motion to Withdraw Plea of Guilty is **MOOT**. ECF No. 43.

Mr. Medrano's sentencing hearing shall be held on March 7, 2023, at 3:15 p.m. Pursuant to the Court's April 4, 2022 Memorandum, sentencing memoranda must be filed no less than fourteen days prior to the sentencing hearing. This fourteen-day-time period shall include holidays and weekends. Replies to memoranda are due no less than seven days before the hearing.

Additionally, counsel seeking an outside the guidelines sentence must file a motion. Motions for departure or variance must be filed at least fourteen days before the sentencing hearing and must state the requested degree of relief and the reason for the requested relief. If a party requests both a departure and variance, it shall file a separate motion for each. Written responses must be filed at least seven days before sentencing and state all bases for any objections to the requested relief. Pursuant to LR Cr P 32.01(d), within fourteen days after receiving the presentence report, counsel shall provide any written objections to the PSR to the probation officer and opposing counsel.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein, the United States Probation Office and United States Marshals Service.

**DATED**: January 6, 2023

GINA M. GROH
UNITED STATES DISTRICT JUDGE